**In the United States District Court**
**for the District of Kansas**

---

**In re: CCA Recordings 2255 Litigation**,
              **Petitioners,**

**v.**                                           **Case No. 19-cv-2491-JAR-JPO**

                                              **(This Document Relates to Case No. 14-cr-20014-KHV-11, *United States v. Shawn Shutts*, and Case No. 18-cv-2453-JAR-JPO, *Shawn Shutts v. United States*)**

**United States of America.**
              **Respondent.**

---

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Shawn Shutts's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255 (Doc. 725), as supplemented (Doc. 778).[1] Petitioner alleges the government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to his attorney-client communications. As a remedy, he asks the Court to vacate his judgment with prejudice to refiling or alternatively, to reduce his term of imprisonment by approximately 50% and vacate both his term of supervised release and the $14,400 forfeiture money judgment. The government has responded, opposing the motion and

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, No. 14-20014-KHV-11. Citations prefaced with "*CCA Rec. Lit.*, Doc." refer to filings and entries in this consolidated case, No. 19-2491-JAR-JPO. With the exception of *United States v. Carter*, No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in No. 16-20032-JAR are prefaced with "*Black*, Doc."

seeking dismissal on jurisdictional grounds.[2]  For the reasons explained in detail below, Petitioner's challenge to his conviction and sentence is dismissed for lack of standing.

## I.      Background

### A.      Procedural History

Petitioner was charged in Count 1 of a fourth superseding indictment with conspiracy to distribute and possession with intent to distribute more than 50 grams of methamphetamine.[3] The government filed an information under 21 U.S.C. § 851 that enhanced the sentence from a 10-year mandatory minimum to a 20-year mandatory minimum.[4]  On November 17, 2015, Petitioner entered into a binding plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), and pleaded guilty to the conspiracy charge in Count 1.[5]  Pursuant to this agreement, the parties proposed that the court sentence Petitioner to a total sentence of 180 months' imprisonment; the government also agree to withdraw the § 851 information.[6]  On March 8, 2016, Judge Kathryn H. Vratil sentenced Petitioner to 180 months' imprisonment and a five-year term of supervised release.[7]  Petitioner did not file a direct appeal, nor has he filed a prior habeas motion under 28 U.S.C. § 2255.

Petitioner was represented by Wendel Scott Toth in the underlying criminal proceedings. The Court appointed the Federal Public Defender ("FPD") to represent Petitioner in his § 2255 proceedings on July 17, 2018.[8]  On August 28 2018, the FPD filed a motion pursuant to § 2255

---

[2] *Shutts v. United States*, No. 18-2453-JAR-JPO, Docs. 3, 4, 6; *CCA Rec. Lit.*, Docs. 730, 785.

[3] Doc. 151.

[4] Doc. 133.  *See also* 21 U.S.C. § 841(a)(a), (b)(1)(A)(viii), and § 846.

[5] Doc. 322.

[6] *Id.* ¶¶ 3, 5.

[7] Doc. 462.

[8] Standing Order 18-3.

on Petitioner's behalf, setting forth a single ground for relief: the government violated  the Sixth

Amendment by intentionally and unjustifiably intruding into his attorney-client relationship.

Petitioner supplemented his motion on January 28, 2019, to add additional recordings to his

claim.  The government responded to the motion and Petitioner replied.[9]  Petitioner is currently

incarcerated at El Reno FCI, and his release date is February 14, 2028.[10]

### B.      The *Black* Investigation and Order

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black*

Order") that precipitates the § 2255 motions before the Court.[11]  That comprehensive opinion

was intended to provide a record for future consideration of the many anticipated motions filed

pursuant to § 2255 and is incorporated by reference herein.  The Court does not restate the

underlying facts and conclusions of law in detail but will provide excerpts from the record as

needed to frame its discussion of the issues presently before it.

Petitioner seeks relief based on events that came to light in the *Black* case and

investigation, which involved audio recordings of telephone conversations and soundless video

recordings of meetings between attorneys and their clients who were detained at CCA.  The

government admits that it obtained videos from CCA in connection with the *Black* case, which

focused on drug and contraband trafficking inside CCA.  The government's possession of these

recordings came to light in August 2016, when then-Special Assistant United States Attorney

("SAUSA") Erin Tomasic and AUSA Kim Flannigan accused defense attorney Jacquelyn

---

[9] *Shutts* No. 18-2453-JAR-JPO, Docs. 3, 4, 5.

[10] Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Apr. 5, 2021).

[11] Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019).  As discussed in that Order, the Sixth
Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at
Corrections Corporation of America ("CCA").  That facility has since been renamed CoreCivic.  For convenience,
the Court refers to it as CCA in this Order.

Rokusek of "jeopardiz[ing] their investigation" in *Black* based on information they claimed to have gleaned from the video recordings.[12]  The defense also discovered that the  United States Attorney's Office for the District of Kansas ("USAO") had routinely obtained CCA recorded attorney-client phone calls, and that it did so without notice to the attorneys, clients, or courts.[13]

Once notified of the video and audio recordings, this Court ordered (1) all local federal detention facilities to cease recording attorney-client meetings and phone calls;[14] (2) the video and audio recordings in USAO custody to be impounded;[15] and (3) the government to preserve its computer hard drives.[16]  By October 11, 2016, the Court had appointed a Special Master to assist in what the Court termed "Phase I and Phase II" of the Court's investigations, that is, to determine the number of recordings possessed by the government and how to index and segregate them, and to identify privileged or confidential information within those recordings.[17]

On January 31, 2017, the Special Master issued the "First Report Regarding Video Recordings."[18]  The Special Master determined that the government had obtained from CCA video recordings of the attorney-inmate rooms made between February 20, 2016, and May 16, 2016—a period of 86 days, or approximately 14,000 hours—documenting approximately 700 attorney visits.[19]  This Court in *Black* found that the USAO did not come into possession of the

---

[12] *Id.* at 70–80.

[13] *Id.* at 29–30.

[14] *Black*, Doc. 253 at 3.

[15] *Id.* at 3, 12 ("The Court subsequently issued a clawback order directing the government to gather and surrender to the Court all audio recordings in its possession, in the possession of investigative agencies, and in the possession of other defendants who had received them in discovery.").

[16] *Id.* at 40.  At the September 7, 2016 hearing in *Black*, "[t]he Court ordered the government to retain and preserve all of the hard drives as well as all of the hardware necessary to access the information on the hard drives." *Id.*

[17] *Black*, Doc. 146 (Appointment Order).

[18] *Black*, Doc. 193.

[19] *Id.* at 3, 5 (specifically, CCA Attorney Meeting Rooms 3 and 6 through 9).

CCA videos until June 1, 2016.[20]  The Court has since clarified that the government's possession

of the video recordings began when the United States Secret Service picked up DVR 6 from

CCA on May 17, 2016.[21]  There is no dispute that the USAO disgorged the video recordings to

the Court on August 9, 2016.  Nor is there evidence that the government maintained copies of the

video recordings on a computer (the "AVPC") or on Special Agent Jeff Stokes's laptop after that

time.[22]

The government did not cooperate with the Special Master's investigation, however, and

its failure to cooperate ultimately resulted in a lengthy delay in this Court's ability to rule on

these issues.  Finally, despite the delay associated with the government's failure to cooperate and

its litigation efforts challenging the propriety of the Special Master's investigation, the Court

conducted a full evidentiary hearing on all pending matters in *Black* in October and November

2018.

On August 13, 2019, the Court issued the *Black* Order.  As detailed in the Order, the

*Black* investigation revealed in relevant part that CCA recorded some of the outgoing phone calls

between detainees and their counsel using equipment provided by Securus Technologies, Inc.

("Securus").[23]  The Court discussed the flaws in CCA's privatization procedures and noted that

as a result of these flaws, "calls between defense attorneys and clients at CCA were routinely

recorded even when the attorney properly requested privatization."[24]  The Court further detailed

how prosecutors at the Kansas City Office of the USAO not only knew that CCA recorded such

---

[20] *Black* Order at 66.

[21] *CCA Rec. Lit.*, Doc. 784 at 13.

[22] *Id.* at Doc. 546 (Petitioners' Notice of Errata withdrawing any such allegations individually or collectively advanced).

[23] *Black* Order at 5, 80, 85.

[24] *Id.* at 80–88.

calls, but that they could obtain the resulting recordings by making "a general request for detainee calls."[25]  The Court found that the government routinely made requests for detainee calls—without taking any precautionary measures to avoid protected communications—and routinely received recordings of attorney-client calls as a result.[26]  The USAO also used a grand jury subpoena to obtain recorded detainee calls associated with approximately 40 detainees as part of the *Black* investigation.[27]

The *Black* Order further discussed the government's view that: (1) the audio recordings are not protected communications because detainees at CCA signed a general waiver and consent to the recording and monitoring of their calls; and (2) that soundless video recordings are not protected communications and rejected the government's argument that the communication in the videos is too rudimentary to discern whether it involves legal advice or strategy or to disclose the content of any accompanying verbal communication[28]

The Order also addressed the governing standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[29]  The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit decision in *Shillinger v. Haworth*,[30] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client

---

[25] *Id.* at 106.

[26] *Id.* at 101–06.

[27] *Id.* at 90–91.

[28] *Id.* at 164–76.

[29] *Id.* at 145–62.

[30] 70 F.3d 1132 (10th Cir. 1995).

communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[31]  Once those elements are established, prejudice is presumed.[32]

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[33]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment.  With respect to the audio recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the telephone recording exists; (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client; and (3) an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[34]  With respect to the video recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the video of the attorney-client meeting exists; and (2) the quality of the non-verbal communication in the video is sufficient to confirm communication between the detainee and counsel.[35]  This threshold showing requires an affidavit from defense counsel confirming that the nature and purpose of the meeting(s) were within the ambit of protected

---

[31] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[32] *Id.*

[33] *Id.* at 163.

[34] *Id.* at 166.

[35] *Id.* at 165–66.

communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[36]

### C.    Proceedings in Consolidated Master Case

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[37]  It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties.

The Court also assumes the reader is familiar with the proceedings in the consolidated master case that precipitates the matter before the Court, and does not restate the underlying facts in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.  The Court must review the recordings in order to rule on the government's objections to the privilege logs, and will do so on a case-by-case basis as needed.  There is no need for such particularized review in the instant case.

As detailed in the Court's October 15, 2020 Orders, the parties' initial efforts at cooperation culminated in the government's notice that it refuses to comply with discovery orders and demands that the Court rule immediately on both the procedural and merits defenses raised in its responses to the § 2255 motions.[38]  Highly summarized, the Court: (1) reaffirmed its previous ruling on the government's implied waiver argument and, in light of the government's blanket objections to petitioners' privilege logs, established a procedure for *in camera* review of the recordings; (2) reaffirmed the finding that soundless video recordings may be protected

---

[36] *Id.*

[37] *CCA Rec. Lit.*, Doc. 1.

[38] *Id.*, Docs. 587, 588.

communications and found that petitioners did not waive any protection because the attorney meeting rooms were monitored; (3) ordered petitioners asserting audio recording claims to supplement the record with affidavits on the issue of waiver; (4) ordered the parties to supplement their responses and replies to address jurisdictional defenses and the collateral-attack waiver by plea agreement issue; and (5) found the government's refusal to comply with discovery orders issued by the Court sanctionable under Fed. R. Civ. P. 37(b)(2) and notified the government of its intent to take as conclusively established certain facts petitioners might have proved regarding the "privy to" element of their Sixth Amendment claims for any petitioner who establishes that he or she is entitled to an evidentiary hearing.[39]

On January 18, 2021, the Court issued an order: (1) reaffirming and expanding its holding regarding the applicable Sixth Amendment standard; (2) addressing the collateral-waiver by plea issue; and (3) addressing jurisdictional defenses raised by the government, including certification requirements under Rule 2(b) of the Rules Governing Section 2255 Proceedings.[40]  Petitioner timely filed his Signed Rule 2(b)(5) Verification on March 29, 2021.[41]

**D.    Recordings in this Case**

Upon arriving at CCA, Petitioner signed several documents acknowledging that telephone calls he made from CCA may be monitored and recorded and advising him that calls with his attorney were subject to being monitored unless he followed the privatization procedure in place to make an unmonitored call.[42]  While Petitioner was detained at CCA, he called his attorney to discuss his case.

---

[39] *Id.*

[40] *CCA Rec. Lit.*, Doc. 730 (clarified and reconsidered in part on other grounds, *id.*, Doc. 784).

[41] *Id.*, Doc. 812.

[42] *Shutts*, 18-2453-JAR-JPO, Docs. 4-3, 4-4.

On August 13, 2019, this Court released the video recordings to the FPD as a result of the *Black* investigation.[43]   The government received one video recording of Petitioner meeting with Toth at CCA on March 7, 2016.

Petitioner was prosecuted by SAUSA Erin Tomasic, AUSA James Ward, and AUSA Sherri Catania.[44]   Ward and Catania state in an affidavit that they were not aware of the video recording of the meeting nor did they review it.[45]   Ward and Catania also state that they did not request nor listen to the audio recording, which was obtained in the separate *Black* investigation.[46]

Per the parties' agreement, as part of the *Black* investigation, the government began surrendering recordings and derivative evidence of audio calls from CCA that were in its possession.[47]   The FPD reviewed the recording of Petitioner speaking with Toth from CCA on March 7, 2016.  Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed protected communication, verifying that during the phone conversation, Petitioner discussed matters "relat[ing] to legal advice or strategy" with Toth.[48]   Petitioner also provided a sworn declaration from Toth stating that the telephone conversations related to legal advice or strategy, that he did not know or believe that any of his conversations with clients were subject to monitoring or recording, inasmuch as these were private attorney-client phone calls with no one else on the line, that he does not remember whether he informed Petitioner before the call was

---

[43] *Black* Order at 165.  The FPD took possession of the DVR hard drives on August 16, 2019.  *Black*, Doc. 761.

[44] Tomasic was terminated in May 2017, after she admitted to listening to calls between a defendant and counsel in a separate criminal proceeding.  *Black* Order at 98.

[45] *Shutts*, No. 18-2453-JAR-JPO, Docs. 4-1, 4-2.

[46] *Id.*

[47] *Black*, Doc. 705.

[48] *CCA Rec. Lit.*, Doc. 205-2, at 180–81.

made that it was subject to monitoring or recording, that he did not consent to any such monitoring or recording, and that he believed there was no need to privatize his phone number because the attorney-client calls were treated as confidential.[49]

Petitioner's privilege log also verified that during the March 7, 2016 meeting, Petitioner discussed matters relating to legal advice and strategy with Toth.[50]  Petitioner also provided a sworn declaration from Toth, stating that he reviewed the video recording listed on the privilege log that occurred on March 7, 2016, and confirmed, with respect to the recorded meeting and each other meeting with Petitioner at CCA: (1) the only reason he met with Shutts "was to discuss matters related to legal advice or strategy; and (2) he had no knowledge nor did he believe that the meetings were recorded as they were attorney-client protected, that he did not consent to such, and that he was not aware such recordings would be dispensed to prosecutors.[51]

Pursuant to the Court's order, Petitioner supplemented the record with a sworn statement addressing the issue of waiver with respect to his audio recording claims.[52]  He avers that he did not know that by signing the document, he was consenting to the monitoring and/or recording of his attorney-client calls unless he took certain steps, or that he was consenting to CCA giving the recordings to the USAO and its agents.  Petitioner further avers that at the time he placed the calls listed on the privilege log, he did not understand that the recorded preamble applied to attorney-client calls, that the written warning signs placed on or near the telephone applied to attorney-client calls, that his attorney-client calls were subject to monitoring or recording, or that the USAO or its agents could obtain recordings of his attorney-client calls from CCA.

---

[49] *Shutts*, No. 18-2453-JAR-JPO, Doc. 9-1.

[50] *CCA Rec. Lit.*, Doc. 205-2, at 180–81.

[51] *Shutts*, No. 18-2453-JAR-JPO, Doc. 5-1.

[52] *Id.* Doc. 8-1.

After the government objected to Petitioner's privilege log, the Court reviewed the audio and video recordings *in camera*.  At the beginning of each call, a recorded preamble states the following language: "This is a collect call from an inmate at CCA-Leavenworth Detention Center.  This call is subject to recording and monitoring."  There is no discussion of this preamble between Petitioner and Toth in either of the calls listed in the privilege log, nor any statements acknowledging the warning or evincing awareness that the calls were being recorded during their conversation.  As set out in the privilege log, the content of the call includes discussions relating to legal advice or strategy.  The Court also confirms that the video recording shows Petitioner meeting with Toth.  In light of the analysis below, however, the details of the attorney-client conversations and of the meeting visible in the video are not pertinent and will not be discussed in this order.

## II.      Discussion

The government argues that Petitioner lacks standing to challenge both his conviction and sentence because both the audio and video recordings were accessed after Petitioner was sentenced.[53]

### A.      Justiciability Standards

Article III of the Constitution gives federal courts the power to exercise jurisdiction only over "Cases" and "Controversies."  Federal courts must have a statutory or constitutional basis to exercise jurisdiction.[54]  And, without jurisdiction, a court must dismiss the case.[55]  Courts thus must determine, either *sua sponte* or upon a challenge by a party "at any stage in the litigation,"

---

[53] *Id.*, Doc. 6; *CCA Rec. Lit.*, Doc. 785 at 6–9.

[54] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

[55] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

whether subject matter jurisdiction exists.[56]  Article III's case-or-controversy requirement applies at all stages of litigation.[57]  There are three basic elements of standing: (1) an injury, (2) a causal connection between that injury and conduct complained of in the motion, and (3) the likelihood that court action could redress that injury.[58]  To demonstrate causation, a party must show that their alleged injury is "fairly traceable" to the complained of conduct.[59]  "Article III . . . require[s] proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."[60]  "When '[s]peculative inferences are necessary to connect [a plaintiff's] injury to the challenged action,' this burden has not been met."[61]

### B.     Timing of the Alleged Violation

The recorded phone conversation and meeting between Petitioner and Toth took place on March 7, 2016, after he entered a guilty plea on November 17, 2015, and the day before he was sentenced on March 8, 2016.  However, the FPD recently confirmed that it has revisited the relevant Securus records and, based on the available evidence, Petitioner cannot prove that anyone actually accessed the relevant audio recordings until after he was sentenced and thus he cannot rely on the adverse inference to prove the prosecution team became privy to the audio recordings before that point.  Specifically, it is undisputed that the Securus call access logs Petitioner provided in discovery state that these calls were "accessed" on June 25, 2016, after he

---

[56] *Arbaugh,* 546 U.S. at 506 (explaining that challenges to subject matter jurisdiction "may be raised . . . at any stage in the litigation, even after trial and the entry of judgment.").

[57] *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

[58] *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 2021 WL 850106, at *2 (Mar. 8, 2021).

[59] *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008) (*citing Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)).

[60] *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005).

[61] *Id.* at 1157 (*quoting Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976)).

was sentenced on March 8, 2016.[62]  Further, as noted above, the USAO did not have possession of and access to the video recordings until May 17, 2016, and it gave up possession when it disgorged the videos to the Court on August 9, 2016.  Thus, any alleged Sixth Amendment violation could not have occurred until after both Petitioner's plea and sentencing were already complete, leaving no redressable injury.[63]

As this Court discussed in its January 18, 2021 Order, when the alleged intrusion occurs after the petitioner was sentenced, "the intrusion cannot be tied to any claimed unfairness or impropriety in the conviction, plea, or sentencing process.  Without such a nexus, these petitioners cannot proceed with claims challenging either their conviction or sentences."[64] Falling squarely into this category, the Court concludes that Petitioner lacks standing to challenge his conviction and sentence and his motion must be dismissed for lack of jurisdiction.[65]

## III.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[66]  If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying

---

[62] *CCA Rec. Lit.,* Doc. 785 at 6–9, Attach. B; *Shutts*, No. 18-2543-JAR-JPO, Doc. 12-3.

[63] *CCA Rec. Lit.*, Doc. 793 at 8–9.  The FPD continues to maintain that the earliest date an audio recording could *potentially* be accessed is the date the recording was created but, after reviewing the evidence, agrees that Shutts cannot prove that his recordings were *actually* accessed on the Securus Call Platform before he was sentenced.  *Id.* at 8, n.16.

[64] *See CCA Rec. Lit.*, Doc. 730 at 53.

[65] Because lack of jurisdiction provides a sufficient basis to dismiss Petitioner's § 2255 motion, the Court does not address the government's other argument regarding timeliness under § 2255(f)(4).

[66] 28 U.S.C. § 2253(c)(2).

constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' *and* (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[67]  For the reasons explained above, Petitioner has not met either showing and the Court therefore denies a COA.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Shawn Shutts's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255 (Doc. 725), as supplemented, is **dismissed**.  Petitioner is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: <u>April 6, 2021</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[67] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (emphasis in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).